**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PMC CASUALTY CORP., a Delaware corporation,

    Plaintiff,

v.

VIRGINIA SURETY COMPANY, INC., an Illinois corporation,

    Defendant.

_____/

Case No:

## COMPLAINT

Plaintiff PMC Casualty Corp. ("PMC Casualty"), for its Complaint against Defendant Virginia Surety Company, Inc. ("Virginia Surety"), through its counsel, states as follows:

### STATEMENT OF THE CASE

1. This action arises out of Virginia Surety's failure to pay PMC Casualty more than $20 million that Virginia Surety owes to PMC Casualty under the parties' Reinsurance Agreement. Pursuant to the Reinsurance Agreement, PMC Casualty (the reinsurer) entrusted funds to Virginia Surety (the reinsured or ceding company). Although these funds were to be maintained in a Funds Withheld Account, the Reinsurance Agreement requires Virginia Surety to immediately remit to PMC Casualty any surplus amounts in the Funds Withheld Account.

2. Virginia Surety has acknowledged that the Funds Withheld Account contains more than $20 million in surplus amounts, but has failed and refused to remit these amounts to PMC Casualty despite repeated demands, in breach of the Reinsurance Agreement.

## PARTIES

3. Plaintiff PMC Casualty is a Delaware corporation with its principal place of business in Pinellas County, Florida, within the Tampa Division of the Middle District of Florida.

4. Defendant Virginia Surety is an Illinois corporation with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

5. Virginia Surety is subject to jurisdiction in Florida pursuant to Fla. Stat. § 48.193 and U.S. Const. amend. XIV because Virginia Surety, at all relevant times, (a) operated, conducted, engaged in or carried on a business or business venture in Florida or had an office or agency in Florida; (b) contracted to insure a person, property or risk located within Florida at the time of contracting; and/or (c) breached a contract in Florida by failing to perform acts required by the contract to be performed in this state.

6. Specifically, Virginia Surety (1) entered into the Reinsurance Agreement with Pinellas County, Florida-headquartered PMC Casualty; (2) conducted and engaged in business under the Reinsurance Agreement in Pinellas County, Florida; (3) communicated with PMC Casualty in Pinellas County, Florida, in conducting

business under the Reinsurance Agreement, including in-person meetings at, and via telephone and email to, PMC Casualty's offices in Pinellas County, Florida; (4) previously issued payment under the Reinsurance Agreement into PMC casualty's bank account in Pinellas County, Florida; (5) breached the Reinsurance Agreement in Pinellas County, Florida by failing to pay the amounts due under the Reinsurance Agreement into PMC Casualty's bank account in Pinellas County, Florida; (6) contracted to insure a person, property or risk located within Florida at the time of contracting; and (7) solicited business from PMC Casualty, through communication that took place in Pinellas County, Florida. The United States District Court for the Middle District of Florida accordingly has personal jurisdiction over Virginia Surety for purposes of this lawsuit arising from the above-specified activities.

7. The Court has subject matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is a diversity of citizenship between the parties.

8. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and the Tampa Division pursuant to Middle District of Florida Local Rule 1.04. The Tampa Division of the Middle District of Florida encompasses the counties where PMC Casualty's offices reside; where a substantial portion of the events giving rise to this cause of action accrued; where PMC Casualty was and is due to be paid by Virginia Surety in the Tampa Division of the Middle District of Florida; and a substantial part of the acts or omissions giving rise to this action occurred in the Tampa Division of the Middle District of Florida.

**FACTS**

9. This action arises from the parties' relationship in connection with insurance and reinsurance for obligations arising under vehicle service contracts that provide consumers with warranty-like coverage after expiration of their car's original warranty (the "Customer Contracts").

10. For several years, Protect My Car, LLC ("Protect LLC") and Protect My Car Admin Services, Inc. ("Protect Admin") (collectively, the "Protect Entities") sold Customer Contracts to consumers.

11. In order to insure its obligations under the Customer Contracts, Protect LLC obtained contractual liability insurance policies (individually, a "CLIP", and collectively, "CLIPs") from Virginia Surety.

A. **PMC Casualty and Virginia Surety Enter into the Reinsurance Agreement**

12. Reinsurance is a contract that one insurer makes with another insurer to provide protection against the risks the first insurer assumed in its direct insurance policy, such as the CLIPs that Virginia Surety issued here.

13. Here, after issuing the CLIPs, Virginia Surety obtained reinsurance from PMC Casualty in connection with the risks it accepted in issuing the CLIPs.

14. Pursuant to this reinsurance arrangement, Virginia Surety entered into a Reinsurance Agreement with PMC Casualty dated November 16, 2020, and effective September 5, 2018 (the "Reinsurance Agreement"). A true and correct copy of the Reinsurance Agreement is attached hereto as **Exhibit 1**.

15. Under the Reinsurance Agreement, Virginia Surety ceded, and PMC Casualty reinsured, 100% of the risk of any payments that might have to be made under the Customer Contracts covered by the CLIPs, including the return of amounts due to consumers if the Customer Contracts were cancelled mid-term.

16. Consumers pay for the Customer Contracts on a monthly basis. Accordingly, refunds typically are minimal when a Customer Contract is canceled.

17. The Reinsurance Agreement states that PMC Casualty shall provide a Trust Account or maintain a Letter of Credit, or both, to secure its financial obligations to Virginia Surety under the Reinsurance Agreement.

18. The Reinsurance Agreement restricts Virginia Surety's ability to withdraw assets in the Trust Account or Letter of Credit. Specifically, the Reinsurance Agreement provides:

> (e) Reinsuring Company and Ceding Company agree that the assets in the Trust Account … may be withdrawn by Ceding Company … only for one or more of the following purposes:
>
> > (1) to reimburse Ceding Company for Reinsuring Company's share of premiums refunded pursuant to the provisions of the Reinsured Policies on account of cancellations of those Reinsured Policies;
> >
> > (2) to reimburse Ceding Company for Reinsuring Company's share of surrenders and benefits or loses paid for Ceding Company pursuant to the terms and provisions of the Reinsured Policies;
> >
> > (3) to fund an account with Ceding Company in an amount at least equal to the deduction, for reinsurance ceded, from Ceding Company's liabilities for Reinsured Policies ceded under this Agreement. The account will include, but not be limited to, reserves for claims and losses incurred (including losses incurred but not reported), reserves for Loss Adjustment Expenses and unearned premium reserves; and
> >
> > (4) to pay any other amounts Ceding Company claims are due under this Agreement.

(*See* Ex. 1, at pp. 8-9, Section A-11(e)(1)-(4)).

19. The Reinsurance Agreement requires that Virginia Surety provide within forty-five (45) days after the close of each calendar quarter a quarterly report addressing, among other information, insurance and reinsurance premium and reserves and unearned reserves for the report period. (*See* Ex. 1, at pp. 5-6, Section A-9).

20. The Reinsurance Agreement sets forth the method of calculation of the account between PMC Casualty and Virginia Surety for each report period, including consideration of reinsurance premium, and provides that if the amount is positive, it is the net due to PMC Casualty from Virginia Surety, and if negative, it is the net due from PMC Casualty to Virginia Surety. Specifically, the Reinsurance Agreement provides:

> (a) The calculation of the account between Ceding Company and Reinsuring company for each Report Period will be as follows:
>
> (1) Reinsurance Premium
>
> (2) Less Reinsurance Losses Paid and Loss Adjustment Expenses under Section A-7.
>
> (3) Less Taxes under Section A-4.
>
> (4) Less Advances under Section A-8.
>
> (5) Less any other amount relevant to the Agreement, including any debit balance for Insurance Premium owed to Ceding Company but not received from Administrator.
>
> (6) Equals the sum of which (i) if positive, is the net due to Reinsuring Company, and (ii) if negative, is the net due from Reinsuring Company.

(*See* Ex. 1, at p. 6, Section A-10(a)).

21. The Reinsurance Agreement provides that if a report shows a net amount due to PMC Casualty, that amount will be paid when the report is rendered and that interest will be paid on amounts not paid when due:

> All settlements of account between [Virginia Surety] and [PMC Casualty] must be made in cash (United States legal tender) or its equivalent. The net amount shown by each Report and the calculation in Section A-10(a) to be due to either party (i) will, if due to Reinsuring Company, be remitted by Ceding Company at the time the Report is rendered ("Reinsuring Company Due Date") …; provided that if such net amount is not remitted by the Reinsuring Company Due Date … interest at the prime rate as published in *The Wall Street Journal* will accrue thereon from the Reinsuring Company Due Date … until payment is made.

(*See* Ex. 1, at p. 6, Section A-10(b)).

### B. PMC Casualty and Virginia Surety Amend the Reinsurance Agreement

22. On April 4, 2023, PMC Casualty and Virginia Surety entered into an Amendment to the Reinsurance Agreement, effective April 1, 2023 (the "Amendment"). A true and correct copy of the Amendment is attached hereto as **Exhibit 2**.

23. The Amendment resulted in $20 million previously held in a PMC Casualty Trust Account being transferred to a "Funds Withheld Account" held by Virginia Surety.

24. The Amendment provides that Virginia Surety's ability to withdraw the assets in the Funds Withheld Account is subject to the same restrictions that limited Virginia Surety's right to withdraw assets from the Trust Account.

25. The Amendment provides:

    (7)    [Virginia Surety] will promptly return to the Funds Withheld Account any amounts of funds withdrawn in excess of the actual amounts required …, [and] any amounts determined not to be due. Provided [PMC Casualty] has provided a monthly report to [Virginia Surety] for the prior month, and [Virginia Surety] has verified the report, [Virginia Surety] will release funds from the Funds Withheld Account to [PMC Casualty] for reimbursement of claim and cancellation refunds made by [PMC Casualty] to Holders.

    (8)    Such funds will be considered property of [PMC Casualty] while held by [Virginia Casualty], and [Virginia Casualty] shall separately account therefor.

    (9)    [Virginia Casualty] will provide [PMC Casualty] a monthly report indicating the Funds Withheld held by [Virginia Surety].

(*See* Ex. 2, at p. 2, Section A-11).

26. Pursuant to the Amendment, PMC Casualty provided regular reports to Virginia Surety of the required data under the Reinsurance Agreement.

27. By way of the cession statements that Virginia Surety provided to PMC Casualty, Virginia Surety verified the data in the reports provided by PMC Casualty in its own reporting back to PMC Casualty.

    **C**.     **Virginia Surety Acknowledges Amounts Owed to PMC Casualty for Cancellation Refunds**

26. When a new Customer Contract is insured by a CLIP, premiums for the coverage provided by the CLIP for that Customer Contract are funded to Virginia Surety for the entire life of the Customer Contract. Throughout the period covered by the Reinsurance Agreement, however, certain customers who purchased Customer Contracts insured by the CLIPs have exercised their right to cancel those Customer Contracts mid-term. When a Customer Contract is cancelled mid-term, a cancellation

refund becomes due to PMC Casualty in an amount equal to the unearned premiums paid to Virginia Surety.

27. Pursuant to the Reinsurance Agreement and Amendment, PMC Casualty regularly provided reports that reflected cancellation refunds due to PMC Casualty for unearned premiums relating to cancelled Customer Contracts. These amounts, once verified by Virginia Surety, are reflected in Virginia Surety's quarterly calculation and report of the account between Virginia Surety and PMC Casualty and, if resulting in a surplus, are to be immediately paid to PMC Casualty.

28. Virginia Surety owes significant premium refund amounts to PMC Casualty under the Reinsurance Agreement and Amendment (the "Cancellation Refund Amount").

29. In a report to PMC Casualty for Q4 2023, Virginia Surety acknowledged "Cancellation Refunds due to PMC" in the amount of $9,969,023.

30. In a report to PMC Casualty dated "as of" January 31, 2024, Virginia Surety acknowledged $18,551,174 in "cancellations due PMC."

**D.  Virginia Surety Refuses to Pay the Amounts Owed PMC Casualty Based on Invalid Interpretations of the Reinsurance Agreement and Amendment**

31. Despite these acknowledgments by Virginia Surety of the amounts it owes to PMC Casualty, and PMC Casualty's demands for payment, Virginia Surety has failed and refused to pay PMC Casualty the Cancellation Refund Amount.

32. Instead, Virginia Surety has informed PMC Casualty that it is withholding payment of amounts owed to PMC Casualty based on claims brought

against Virginia Surety by third-party PayLink Payment Plans, LLC ("PayLink") in a separate action pending in Cook County Circuit Court, *PayLink Payment Plans, LLC v. Virginia Surety Company, Inc.*, No. 223L12043 (Ill. Cir. Ct., Cook County) (the "PayLink Action").

33. In the PayLink Action, PayLink alleges that Virginia Surety should pay PayLink an amount is excess of $20 million with respect to premium cancellation refunds under the CLIPs, even though it is not a party to or a third-party beneficiary of those CLIPs.

34. Virginia Surety has raised a number of invalid and improper arguments in an attempt to avoid payment of the amounts due PMC Casualty.

35. First, Virginia Surety has argued that it is entitled to be reimbursed for the amounts sought by PayLink under Section A-6 of the Reinsurance Agreement, which provides for "reimbursement from [PMC Casualty] for Reinsurance Losses Paid and for refunds." But that provision applies only to refunds actually paid by Virginia Surety, not to amounts a third party claims that Virginia Surety owes but that Virginia Surety has not even paid.

36. Second, Virginia Surety has argued that Sections A-11(e)(1) and (2) of the Reinsurance Agreement allow it to utilize the assets in the Funds Withheld Account "to reimburse" itself for PMC's share of premiums refunded … on account of cancellations of … [the] Reinsured Policies," (*i.e.*, the CLIPs) or PMC Casualty's share of "surrenders," but the CLIPs have not been cancelled and the Cancellation Refund Amount has nothing to do with PMC Casualty's share of "surrenders".

37. Third, Virginia Surety has argued that Section A-11(e)(4) of the Reinsurance Agreement allows it to utilize the assets in the Funds Withheld Account because that section allows it to use those assets "to pay any other amounts [Virginia Surety] claims are due under [the Reinsurance Agreement]." But the premium cancellation refunds sought by PayLink in the PayLink Action are not "amounts due under the Reinsurance Agreement."

38. Fourth, Virginia Surety argues that the consideration of "any other amount relevant to the Agreement" under Section A-10(a)(5) of the Reinsurance Agreement, justifies its withholding of payment to PMC Casualty. But that provision concerns other debits or credits on the account between PMC Casualty and Virginia Surety and cannot reasonably be construed to apply to third-party claims, like the claims brought by PayLink in the PayLink Action, that Virginia Surety agrees are not compensable under the CLIPs.

39. Fifth, Virginia Surety argues that "[s]equencing any payment to PMC Casualty to occur after Virginia Surety's rights vis-à-vis PayLink are judicially resolved makes especially good sense" in light of PMC's Casualty agreement to "follow the fortunes" of Virginia Surety under Section A-3 of the Reinsurance Agreement. But the "follow the fortunes" obligation only concerns the standard for evaluating Virginia Surety's claims handling decisions, and does not confer on Virginia Surety the sweeping right to withhold payment of amounts due from the Withhold Funds Account based on third-party litigation pending against Virginia Surety that Virginia Surety itself has declared to be without basis. Further, this provision is expressly

"subject to the terms of this Agreement," and the other terms of the Reinsurance Agreement require Virginia Surety to pay the Cancellation Refund Amount to PMC Casualty.

40. None of Virginia Surety's excuses for withholding payment from PMC Casualty are valid, as neither the Reinsurance Agreement nor the Amendment permit Virginia Surety to assume control over amounts owed to PMC Casualty based on third-party claims against Virginia Surety that Virginia Surety admits are not covered by the CLIPs.

41. By refusing to pay PMC Casualty the Cancellation Refund Amount on the basis of a claim that Virginia Surety admits is not covered by the CLIPs, Virginia Surety has assumed control over the Cancellation Refund Amount without any contractual or other right to do so.

**E.     Virginia Surety Acknowledges but Fails to Pay Amounts Owed to PMC Casualty for Open and Unpaid Claims**

42. Virginia Surety also owes substantial amounts to PMC Casualty under the Reinsurance Agreement for open and unpaid claims (the "Open Claim Amount").

43. Virginia Surety has confirmed that Protect LLC has properly paid claims due to customers under insured Customer Contracts in the aggregate amount of $1,889,541.45.

44. The $1,889,541 due for the Open Claims is reflected in the report to PMC Casualty for Q4 2023 and the report to PMC Casualty dated "as of" January 31, 2024.

45. Despite these acknowledgments, and PMC Casualty's demands for payment, Virginia Surety has failed and refused to pay PMC Casualty the Open Claim Amount.

### F. Virginia Surety Fails to Account for and Pay Interest Owed under the Reinsurance Agreement for the Cancellation Refund Amount and Open Claim Amount

46. Under the Reinsurance Agreement, Virginia Surety agreed to pay interest on funds that it does not pay to PMC Casualty when due (*i.e.*, when reports showing amounts due are rendered).

47. The Reinsurance Agreement provides that such interest must be calculated at the Wall Street Journal prime rate beginning on the date the sums were due.

48. The accrued interest on the Cancellation Refund Amount and Open Claim Amount as of June 6, 2024, is at least $1,011,385 and continues to accrue.

49. The Reinsurance Agreement obligates Virginia Surety to include in its reports to PMC Casualty both the principal amounts due to PMC Casualty and any interest due on amounts owed to PMC Casualty.

50. Despite this requirement, and PMC Casualty's demand that Virginia Surety comply with this requirement, Virginia Surety has failed to account for any interest due to PMC Casualty on any of its reports, let alone pay any such interest to PMC Casualty.

## COUNT I
### (Breach of Contract Against Virginia Surety)

51. PMC Casualty repeats and incorporates the allegations set forth in paragraphs 1-50 above as if fully set forth herein.

52. All conditions precedent to Virginia Surety's liability under the Reinsurance Agreement have been satisfied to the extent they are not subject to waiver, estoppel or other avoidance as against Virginia Surety.

53. Virginia Surety owes, and acknowledges that it owes, the Cancellation Refund Amount and Open Claim Amount to PMC Casualty under the Reinsurance Agreement.

54. Virginia Surety was obligated under the Reinsurance Agreement to pay the Cancellation Refund Amount and the Open Claim Amount to PMC Casualty at the time it rendered reports to PMC Casualty acknowledging the amounts due.

55. Interest has been and continues to be due on these amounts from the date the reports were rendered.

56. To date, Virginia Surety has failed and refused to pay the Cancellation Refund Amount, Open Claim Amount or interest on these amounts.

57. Virginia Surety has violated its obligation under the Reinsurance Agreement to account for interest due to PMC Casualty on its reports.

58. Accordingly, Virginia Surety has breached the Reinsurance Agreement.

59. As a direct result of Virginia Surety's breach of the Reinsurance Agreement, PMC Casualty has been deprived of the benefit of the Reinsurance Agreement.

## PRAYER FOR RELIEF

WHEREFORE, PMC Casualty requests this Court grant judgment in its favor against Virginia Surety as follows:

(i) Awarding money damages that PMC Casualty has suffered as a result of Virginia Surety's breach of the Reinsurance Agreement;

(ii) Awarding PMC Casualty its consequential damages, including but not limited to attorneys' fees;

(iii) Awarding PMC Casualty pre- and post- judgment interest; and

(iv) Awarding PMC Casualty such other relief as justice requires.

Dated: June 7, 2024

Respectfully submitted,

*/s/ Lisa M. Baird*
Lisa M. Baird (SBN 0961191)
lbaird@reedsmith.com
REED SMITH LLP
200 South Biscayne Boulevard
Suite 2600
Miami, FL 33131
Telephone: +1 786 747 0200
Facsimile: +1 786 747 0299

Thomas A. Marrinson (*Pro hac vice to be filed*)
Noel C. Paul (*Pro hac vice to be filed*)
Jalen M. Brown (*Pro hac vice to be filed*)
**REED SMITH LLP**
tmarrinson@reedsmith.com
npaul@reedsmith.com
jalenbrown@reedsmith.com

          10 South Wacker Drive, 40th Floor
          Chicago, IL  60606-7507
          Tel: (312) 207-1000
          Fax: (312) 207-6400

*Counsel for PMC Casualty Corp.*