**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PMC CASUALTY CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 7795** |
| | ) | |
| **VIRGINIA SURETY CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case involves a breach of contract dispute between Virginia Surety Co., Inc., an insurance company, and PMC Casualty Corp., a reinsurance company. In a previous order, the Court denied a motion to intervene by PayLink Payment Plans, LLC, a creditor seeking to assert claims against Virginia Surety and PMC Casualty based on their insurance obligations to an alleged debtor, Protect My Car, LLC. PayLink has appealed that decision, and its appeal is currently pending before the Seventh Circuit. Virginia Surety has filed a motion asking the Court to stay proceedings pending resolution of PayLink's appeal. For the reasons below, the Court denies the motion.

## Background

The details of the underlying contractual dispute between Virginia Surety and PMC Casualty are complex and have been described in prior orders. The Court therefore provides only a brief sketch of the facts, focusing on those most relevant to the stay motion.

PayLink financed vehicle service contracts sold to motor vehicle owners by

Protect My Car and its affiliates. Protect My Car obtained insurance from Virginia Surety for protection in case Protect My Car could not repay PayLink. Virginia Surety, in turn, entered into an agreement with PMC Casualty to insure its own insurance obligations to Protect My Car—a reinsurance agreement. In exchange, Virginia Surety agreed to pay PMC Casualty any positive net reserves from Virginia Surety's insurance of the underlying service contracts.

As matters turned out, Protect My Car was unable to repay PayLink for its financing after a large number of its vehicle service contracts were cancelled. PayLink sued Protect My Car and Virginia Surety in separate state court suits. PMC Casualty has intervened in the state court litigation against Virginia Surety, which remains ongoing.

Meanwhile, Virginia Surety allegedly refused to pay some net reserves to PMC Casualty, citing its potential liability to PayLink from the state court suits. PMC Casualty responded by initiating this suit against Virginia Surety in the Middle District of Florida, alleging breach of the reinsurance agreement. The case was later transferred to this District, where it was assigned to the undersigned judge.

PayLink moved to intervene as a defendant in this litigation, proposing to assert state-law crossclaims and counterclaims against both Virginia Surety and PMC Casualty. In its motion, PayLink made clear that if granted leave to intervene, it intended to "move to dismiss this case on the grounds that it is an indispensable party whose mandatory presence destroys diversity, and/or stay this case under the *Colorado River* abstention doctrine" pending resolution of the state court litigation. PayLink's Mem. in Supp. of its Mot. to Intervene at 2. PayLink also assured, however, that if its

motions to dismiss or stay this action ended up getting denied following a successful intervention, it would litigate its counterclaims and crossclaims in this case. The Court denied PayLink's motion to intervene. *See PMC Cas. Corp. v. Va. Sur. Co.*, No. 24 C 7795, 2025 WL 1713555, at *1 (N.D. Ill. June 19, 2025). PayLink has appealed that decision, and its appeal is pending before the Seventh Circuit. Virginia Surety has moved to stay proceedings before this Court pending resolution of PayLink's appeal.

### Discussion

In general, a party is not entitled to a stay pending an interlocutory appeal as a matter of right. *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead an exercise of judicial discretion . . . dependent upon the circumstances of the particular case." *Id.* (cleaned up). The Seventh Circuit and more recently the Supreme Court have recognized, however, that in some circumstances a stay of district court proceedings pending an appeal is mandatory, not discretionary, because "whether 'the litigation may go forward in the district court is precisely what the court of appeals must decide.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023) (quoting *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997)).

Virginia Surety invokes that automatic stay rule in its main contention that the Court is "*automatically* and *jurisdictionally* required" to stay further proceedings until PayLink's appeal is resolved because "[i]f permitted by the Court of Appeals, PayLink's intervention could affect nearly every aspect of this case." Mem. in Supp. of Mot. to Stay at 4. For the reasons explained below, the Court disagrees and, exercising its discretion, declines to issue a stay.

A.    **Automatic stay**

The automatic stay rule derives from the principle that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). As the Seventh Circuit has explained, "[t]he qualification 'involved in the appeal' is essential." *Bradford-Scott*, 128 F.3d at 505. That qualification is why, for example, a district court may award costs and attorneys' fees even after the losing side has filed an appeal on the merits. *Id.*

But some seemingly discrete issues implicate the existence of litigation as a whole. In *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989), the Seventh Circuit applied the *Griggs* principle to hold that a district court was required to stay proceedings while the defendants appealed the denial of their qualified immunity defense. It observed that under the Supreme Court's decision in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), "qualified immunity as a matter of law, like the Double Jeopardy Clause, yields a right not to endure the cost and travail of trial." *Apostol*, 870 F.2d at 1338. The Seventh Circuit reasoned that in that situation, "[w]hether there shall be a trial is precisely the 'aspect[] of the case involved in the appeal' under *Forsyth*. It follows that a proper *Forsyth* appeal divests the district court of jurisdiction . . . to require the appealing defendants to appear for trial." *Id.* Recognizing that the automatic stay rule "may injure the legitimate interests of other litigants and the judicial system," the Seventh Circuit established that a district court may continue proceedings if it certifies that the qualified immunity-based appeal is frivolous. *Id.* at 1338–39.

Besides double jeopardy and qualified immunity, the Seventh Circuit has extended its automatic stay rule to appeals from the denial of other forms of immunity from suit, *Goshtasby v. Bd. of Trs. of the Univ. of Ill.*, 123 F.3d 427, 428–29 (7th Cir. 1997), and appeals from denials of motions to compel arbitration under 9 U.S.C. § 16(a), *Bradford-Scott*, 128 F.3d at 506.  An interlocutory appeal in those situations, the Seventh Circuit has concluded, "rais[e] the question whether discovery and trial should proceed" and is "inconsistent with continuation of proceedings in the district court."  *Id.*  "[T]he notice of appeal accordingly brings those proceedings to a halt *unless the appeal is frivolous*. . . .  Otherwise preparation for trial must be suspended until the court of appeals renders a decision."  *Id.*

The Supreme Court recently adopted the automatic stay rule regarding appeals from the denial of a motion to compel arbitration in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), as well as the Seventh Circuit's rationale.  In the Supreme Court's view, "[b]ecause the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.'"  *Id.* at 741.  It continued to explain that "[i]f the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost."  *Id.* at 743.

Virginia Surety argues that the same reasoning applies to the denial of a motion by a non-party to intervene.  It posits that "[t]he question of who may present the case is logically antecedent to the case's presentation" and that "PayLink's appeal . . . relates to essentially *all* 'aspects of the case.'"  Mem. in Supp. of Mot. to Stay at 7 (quoting *Griggs*,

5

459 U.S. at 58). To support this characterization, Virginia Surety contends that because an intervenor gains the full rights of a party, any development of the case without PayLink's participation is inconsistent with the question pending on appeal. Virginia Surety also points to the risk that the Court may have to permit some relitigation of issues or reopen discovery if the Seventh Circuit concludes that PayLink is entitled to intervene. In addition, Virginia Surety warns that "PayLink's appeal has *existential* implications for this case" because PayLink intends, if permitted to intervene, to argue that the case should be dismissed or stayed in light of the state court proceedings. *Id.* at 10.

Virginia Surety's arguments do not persuade the Court that denial of intervention falls within the narrow class of issues requiring an automatic stay pending appeal. At the outset, Virginia Surety's logical antecedence point is off the mark. *Griggs* simply establishes that the district court and appellate court cannot exercise jurisdiction over the same issue. The automatic stay rule accordingly applies when the question of whether the district court can proceed is the precise issue presented on appeal. *See Coinbase*, 599 U.S. at 741. In other words, identity of issues, and not logical antecedence, is what triggers the automatic stay rule. That is why a district court may award attorneys' fees even though a successful appeal on the merits may "affect or nullify the award of fees." *Apostol*, 870 F.2d at 1338. In addition, Virginia Surety's definition of logical antecedence proves too much. In its view, "[t]he trial's participants and its subject matter are logically antecedent to the trial's occurrence." Reply in Supp. of Mot. to Stay at 5. But there are a myriad of motions that may affect a trial's participants or its subject matter. None of the automatic stay cases support requiring a

stay potentially covering such a broad swath of appeals, nor could the *Griggs* principle bear the weight of such a rule.  *See Coinbase*, 599 U.S. at 760–61 (Jackson, J., dissenting) (noting that the majority limited its holding to statutory arbitration).  *Cf. Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 871–875 (1994) (cautioning against a broad reading of the collateral order exception to the final judgment rule).

Rather than logical antecedence, the key aspect of double jeopardy, immunity, and arbitration rights that gives rise to the automatic stay rule is the entitlement not to litigate in district court at all.  This characterization is critical.  It is the reason why a party may immediately appeal an order denying its assertion of those rights.  It explains why the issue on such an appeal is "whether 'the litigation may go forward in the district court'" and therefore why the district court is divested of jurisdiction over the whole case under *Griggs*.  *Coinbase*, 599 U.S. at 741.  It also demonstrates why, in these situations, continued litigation in the district court would, as a practical matter, undermine the purpose of the appealing party's rights and the availability of an appeal to vindicate those rights.  *Id.* at 743 ("A right to interlocutory appeal of the arbitrability issue without an automatic stay of the district court proceedings is . . . not especially sensible.").  More specifically, in these situations, an appellate decision clarifying that the appellant has the right not to litigate would mean little if, in the meantime, the appellant has already been forced to do so.

In contrast, the question pending on appeal from a decision denying intervention is whether to add an additional party to the litigation, not whether the litigation may proceed at all.  This difference is illustrated by the fact that an appeal on intervention contemplates further district court litigation regardless of the outcome.  Additionally, an

7

intervenor's rights are not irretrievably lost by continued district court proceedings. Unlike orders denying double jeopardy, immunity, or arbitration rights, an order denying a motion to intervene is immediately appealable only to preserve the applicant's ability to appeal the final judgment. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987). The putative intervenor's right to "participate more fully in the proceedings" is reviewable after a final judgment and not "irretrievably lost in the absence of an immediate appeal." *Id.* at 376 (quoting *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424 (1985)). This case demonstrates the point. As Virginia Surety recognizes, if a ruling denying intervention is overturned on appeal, the trial court can reopen discovery to allow the intervenor to catch up and, to the extent needed to avoid unfair prejudice, permit the intervenor to relitigate issues decided in its absence.

Virginia Surety's attempt to elevate the stakes of PayLink's intervention motion by relying on PayLink's intent to seek dismissal is unavailing. If intervention necessarily entailed dismissal of the case as a whole, there might be an argument in favor of a stay. In this case, however, it is anything but clear that PayLink's attempt to dismiss the case would succeed. Dismissal is a speculative, downstream possibility. None of the automatic stay cases suggest that a court must enter a prophylactic stay under these circumstances, nor is there any reason to think that it must. To the contrary, the roots of the automatic stay rule in *Griggs* suggest that a district court retains jurisdiction unless the issue on appeal involves the appealing party's right not to litigate in the district court. That is not the issue in PayLink's intervention appeal even if a successful appeal ultimately may lead, indirectly, to dismissal of the case before this Court.

In sum, the Court concludes that the automatic stay rule does not apply to the

intervention appeal in this case.

**B.     Discretionary stay**

Virginia Surety devotes little space to arguing the traditional equitable factors supporting a stay if its request for an automatic stay is denied.  The Court nonetheless examines those factors to decide whether equity warrants a stay.

As noted before, a stay is generally a matter of discretion, with the party requesting a stay bearing the burden to show that it is justified.  *Nken*, 556 U.S. at 433–34.  The legal principles guiding that discretion have been distilled into four factors:  (1) likelihood of success on the merits; (2) the risk of irreparable harm absent a stay; (3) whether issuance of the stay will substantially injure other interested parties; and (4) the public interest.  *Id.* at 434.

In this case, these considerations do not support staying proceedings before this Court pending resolution of PayLink's appeal.  The first factor, likelihood of success on the merits, weighs against a stay.  PayLink's appeal is unlikely to succeed, as both parties to this motion acknowledge.  Virginia Surety correctly points out that the Court should not presume to know how the Seventh Circuit will rule on appeal.  But because the automatic stay rule does not apply, a fair assessment of the merits of PayLink's appeal is relevant to the Court's exercise of its discretion on whether to require a stay.

The second factor, the risk of irreparable harm, also weighs against a stay.  In this case, the harm from continued litigation cannot fairly be characterized as irreparable.  Rather, any perceived harm to either PayLink or the existing parties from continuing the litigation can be remedied by allowing PayLink and others to catch up, by reopening discovery or, if needed, by permitting it or other parties to re-present points

decided in PayLink's absence. To the extent that this arguably imposes a greater burden (primarily on the existing parties), that additional burden amounts to "[m]ere litigation expense" that "does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

The third factor, injury to other parties from a stay, weighs against a stay or (at best for Virginia Surety) is neutral. PMC Casualty has argued that imposition of a stay will substantially injure it by delaying its recovery of whatever damages it may be owed from Virginia Surety, thereby exacerbating PMC Casualty's claimed financial hardship. These relatively conclusory claims may not be overwhelmingly strong, but they offer some support for keeping the case moving.

The fourth factor, the public interest, weighs against a stay. "Delay impairs the 'public interest in the prompt resolution of legal disputes.'" *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990). Such delay, unlike whatever complications might arise if PayLink is later permitted to intervene, cannot be cured. Relevant to this last factor, the parties dispute whether a stay will promote judicial economy and comity. Virginia Surety argues that a stay would permit the Court to avoid any possibility of conflict with the state litigation, and it further points out that there are key disputes awaiting ruling in state court on the issue of Virginia Surety's liability to PayLink. But the mere possibility of conflict from concurrent litigation is an insufficient basis for a stay. And the pending state court rulings, though relevant here, still likely would leave a good deal of work to be done in the present case. As presented in Virginia Surety's motion, the comity considerations do not justify a stay. *See Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) ("[A] federal court may stay a suit in exceptional

circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'" (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).  The parties remain free to keep their eyes on the state litigation and to flesh out these arguments further down the road, via an appropriate motion to abstain.

In sum, the circumstances of this case do not warrant a stay pending resolution of PayLink's appeal.

## Conclusion

For the reasons stated above, the Court denies Virginia Surety's motion to stay proceedings pending appeal [dkt. 117].  The telephonic hearing set for October 21, 2025 will proceed so that the Court can discuss with the parties how the case will proceed from here forward.

Date:  October 19, 2025

_____
MATTHEW F. KENNELLY
United States District Judge